IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HUMBERTO LAGAR,

                Petitioner,                        OPINION AND ORDER

     v.                                                      13-cv-489-wmc

LIZZIE TEGELS, Warden,
Jackson Correctional Institution,

                Respondent.

---

In July of 2013, petitioner Humberto Lagar filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, contending that the Parole Commission's decision to keep him incarcerated beyond his September 8, 2009, presumptive mandatory release for refusing to participate in a Residential Alcohol and Other Drug Abuse ("AODA") treatment program violated his constitutional rights. Lagar subsequently filed several supplements and legal memorandums in support of his petition, as well as a motion for a preliminary injunction (dkt. #31), which was previously denied (dkt. #32). The State also filed an answer and brief in opposition in which it concedes that Lagar's petition is timely and that he has exhausted his available state court remedies with respect to the claim raised in his petition.

Therefore, the petition is ready for a decision on the merits. Unfortunately for Lagar, his petition must be denied because he has not shown that he is "in custody in violation of the Constitution of laws . . . of the United States." 28 U.S.C. § 2254(a).

## FACTS

The material facts and background of this case in the Wisconsin courts are not

disputed. Lagar was convicted of possession with intent to deliver cocaine within a school zone in Milwaukee County Case No. 95CR2577. On February 16, 1996, the circuit court sentenced him as a repeat offender to serve 20 years in prison. He was given a "presumptive" mandatory release date of October 8, 2009, and a discharge date of November 29, 2015. His presumptive mandatory release date was later corrected to September 8, 2009.

Lagar does not challenge the validity of his underlying conviction or sentence. Instead, he challenges an adverse decision by the Parole Commission, which denied him "presumptive" mandatory release. Exhibits provided by Lagar reflect that the Parole Commission denied him release because: (1) he refused to participate in an Alcohol and Other Drug Abuse ("AODA") treatment program as recommended by prison social workers; and (2) he continued to present a danger to the public. For these same reasons, the Parole Commission denied him release in two subsequent decisions on August 10, 2010, and on August 14, 2012.

Lagar eventually completed an AODA program on February 8, 2013, but the Parole Commission has denied him release twice since then, on August 2, 2013 and April 28, 2014. (Dkt. #30 Exhs. H & J). The Parole Commission explained that although Lagar had (reluctantly) completed an AODA program, he still needed to complete a CGIP (Cognitive Intervention Program) and needed to participate in vocational education to better prepare him for his release into the community. (*Id.*) The Parole Commission reasoned that until he completed these tasks, his release posed too great a risk to the

public. (*Id.*) [1]

Lagar filed a petition for a writ of certiorari in Milwaukee County Circuit Court, contending that the Parole Commission's decision to withhold his release until he participated in drug or alcohol treatment amounted to "involuntary commitment" and violated Wisconsin's presumptive mandatory release law. *Lagar v. Graham*, 2010CV913 (Milw. Cty. Cir. Ct.). The court denied the petition, concluding that Lagar had not shown the Parole Commission's decision to be contrary to law. (Dkt. #8-4.) On August 11, 2011, Lagar filed a petition for writ of habeas corpus in Milwaukee County Circuit Court, again challenging the Parole Commission's denial of his release. *Lagar v. Hepp*, 2011CV12938 (Milw. Cty. Cir. Ct.). The circuit court denied this petition as well, which the Wisconsin Court of Appeals summarily affirmed. *Lagar v. Hepp*, 2011AP2884 (Wis. Ct. App. June 13, 2012). Lagar filed three additional petitions for writ of habeas corpus challenging the Parole Commission's decision in Milwaukee County Circuit Court, all of which were denied. *Lagar v. State*, 2012CV6974 (Milw. Cty. Cir. Ct. July 12, 2012); *Lagar v. Smith*, 2012CV9409 (Milw. Cty. Cir. Ct. Nov. 15, 2012); *Lagar v. Tegels*, 2013CV1572 (Milw. Cty. Cir. Ct. May 7, 2013).

Finally, Lagar filed this habeas petition on July 11, 2013, contending that the Parole Commission's denial of his early release from prison violates his rights under the

---

[1] These two, more recent decisions by the Parole Commission occurred after Lagar filed his federal habeas petition. Although Lagar filed supplements to his petition regarding these Commission decisions, he has not shown that he has challenged these decisions in state court as is required before seeking federal habeas relief. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999) (state prisoner must present claims to state court before he make seek federal habeas review). That being said, it is clear any challenge to these Parole Commission decisions would fail for the same reasons that Lagar's challenges to the earlier Commission decisions have failed. Lagar could not show that he is "in custody in violation of the Constitution or laws or

Eighth and Fourteenth Amendments. Having already denied preliminary relief, this court now turns to the merits.

OPINION

A. Due Process

As a preliminary matter, Lagar contends that the Parole Commission's denial of his presumptive mandatory release violated the Eighth Amendment's protections of due process and against cruel and unusual punishment. However, Lagar develops no separate argument supporting the application of the latter protection under the Eighth Amendment as to his case. Instead, all of Lagar's arguments appear subsumed in his due process challenge. Accordingly, the court addresses Lagar's challenges under the framework of the Due Process Clause: whether the Parole Commission's denial of his release deprived him of a liberty interest protected by the Eighth Amendment's due process clause.

"The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999). A liberty interest may arise from the Constitution itself, or may arise from an expectation created by state laws or policies. *Wilkinson v. Austin*, 545 U.S. 209, 221-22 (2005). While "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence," a state may, but need not, create a liberty interest by establishing an entitlement to parole based on certain criteria. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979); *Thompson v. Veach*, 501 F.3d 832, 836 (7th Cir. 2007). In

treaties of the United States."

contrast, a parole scheme that is discretionary creates no liberty interest. *Bd. of Pardons v. Allen*, 482 U.S. 369, 378 (1987); *Grennier v. Frank*, 453 F.3d 442, 444 (7th Cir. 2006).

For inmates like Lagar, whose crimes of conviction occurred before Wisconsin's "truth in sentencing" system, Wis. Stat. § 973.01, the parole system consists of a discretionary and a mandatory scheme. *See State ex rel. Gendrich v. Litscher*, 2001 WI App 163, ¶ 7, 246 Wis. 2d 814, 623 N.W.2d 878 (describing Wisconsin's parole schemes). Lagar was subject to the discretionary parole scheme -- also known as the "presumptive mandatory release" scheme -- because his crime qualified as a "serious felony." *See* Wis. Stat. § 302.11(1g)(am) ("presumptive mandatory release scheme applies to prisoners serving a sentence for "a serious felony committed on or after April 21, 1994, but before December 31, 1999"). In particular, Lagar's cocaine delivery crime under then Wis. Stat. § 161.41(1) -- now § 964.41(1) -- was deemed a "serious felony" by statute at the time of its commission on June 12, 1995. (Dkt. #29-1, Judgement of Conviction.)

This "presumptive mandatory release" scheme grants the Wisconsin Parole Commission authority to deny release to an inmate on certain grounds:

> (b) Before an incarcerated inmate with a presumptive mandatory release date reaches the presumptive mandatory release date specified under par. (am), the parole commission shall proceed under s. 304.06 (1) to consider whether to deny presumptive mandatory release to the inmate. If the parole commission does not deny presumptive mandatory release, the inmate shall be released on parole. The parole commission may deny presumptive mandatory release to an inmate only on one or more of the following grounds:
>
>     1.    Protection of the public.
>
>     2. Refusal by the inmate to participate in counseling or treatment that the social service and clinical staff of the institution determines is necessary for the inmate. . . . The parole commission may not deny presumptive mandatory release to an inmate because of the inmate's refusal to participate in a rehabilitation program under s. 301.047.

Wis. Stat. § 302.11(1g)(b).

In *Gendrich*, the Wisconsin Court of Appeals explained that the Parole Commission's discretion under a "presumptive mandatory release" scheme is "virtually unlimited," and therefore "does not create a protectable liberty interest in parole." 2001 WI App 163, ¶ 7. For the same reason, Lagar cannot show that he was deprived of a liberty interest when the Parole Commission denies his release. *See also Akbar v. Thurmer*, No. 09-C-1045, 2010 WL 1375214, at *1 (E.D. Wis. Apr. 2, 2010) (dismissing § 2254 attack on the Parole Commission's decision to deny parole under § 302.11 because there was no liberty interest at issue); *Tooley v. Smith*, No. 06-C-583-S, 2006 WL 3813657, at *1 (W.D. Wis. Dec. 21, 2006) (same); *Wery v. Lautenschlager*, No. 05-C-0896, 2005 WL 2176961, at *1 (E.D. Wis. Sept. 8, 2005) (same); *McGrath v. Morgan*, No. 05-C-393-C, 2005 WL 2002504, at *2 (W.D. Wis. Aug. 18, 2005) (same).

While Lagar acknowledges that he was subject to a discretionary parole scheme, and that such a scheme does not, by itself, create a liberty interest protected by due process, he argues that the Parole Commission nonetheless deprived him of a liberty interest for three reasons. *First*, Lagar argues that he has a liberty interest in refusing to participate in drug treatment programs against his will, but cites no legal authority to support this argument. The closest Lagar comes is several cases in which courts concluded that individuals have a right to be free from involuntary treatment with antipsychotic drugs, *see, e.g., Washington v. Harper*, 494 U.S. 210 (1990); *Felce v. Fiedler*, 974 F.2d 1484, 1494 (7th Cir. 1992), but there is an obvious difference in forcing an inmate or parolee to ingest antipsychotic drugs and denying discretionary parole because

6

an inmate refuses to participate in a drug treatment program.

*Second*, Lagar argues that he is being punished for being an alleged drug addict. Here, Lagar cites to several cases in which courts have held that drug addiction itself cannot be criminalized. *See, e.g.*, *Robinson v. California*, 370 U.S. 660, 667 (1962); *State v. Bruesewitz,* 57 Wis. 2d 475, 481, 204 N.W.2d 514, 516 (1973). Again, however, these extreme cases are inapposite to Lagar's situation, since he was not charged, convicted or incarcerated for being a drug addict, nor was he denied parole for that reason.

*Third*, Lagar argues that the Parole Commission's denial of his release for refusing to participate in an AODA is contrary to the language of the presumptive mandatory release statute itself. In particular, Lagar points to language in the statute that the "parole commission may not deny presumptive mandatory release to an inmate because of the inmate's refusal to participate in a rehabilitation program ***under s. 301.047***." Wis. Stat. § 302.11(1g)(b)(2). Lagar contends that this statute created a right, which the Parole Commission then arbitrarily denied.

This primary problem with this third argument is that Lagar was never instructed to participate in a "rehabilitation program under § 301.047," or at least Lagar failed to offer any evidence that the Residential AODA program (or "CGIP") at Jackson Correctional Institution, where he is incarcerated, would qualify under § 301.047. That statute relates only to inmate rehabilitation programs run by "nonprofit community-based organizations" and meeting a number of requirements, including that the organization receive no compensation from DOC and agrees to provide "community-based aftercare services for each inmate who completes the program." Wis. Stat. § 301.047(1),(2).

Lagar has not shown that CGIP is operated by a nonprofit community based organization meeting these requirements. Indeed, his only "evidence" on this point consists of:

> (1) responses to Lagar's information requests in which Warden Tegels' states that Jackson Correctional Institution contracts with Horizon Healthcare, an "outside provider," to facilitate the prison's AODA program, (dkt. #16-1); and

> (2) a vague letter written by the Office of Program Services for the DOC in response to an apparent question from Lagar about § 301.047 and Jackson's AODA programs stating that "the AODA Residential Program at JCI would sufficiently address the rehabilitative needs of inmates with a history of substance abuse," (dkt. #8-5).

Neither of these documents are sufficient evidence to find the AODA at Jackson is a program under §301.047(1). At most, Tegels' response suggests that the DOC contracts (pays) outside providers to run the program.

Ultimately, the presumptive mandatory release law expressly authorizes the Commission to deny presumptive mandatory release for "protection of the public," and relatedly an inmate's refusal to participate in necessary counseling or treatment. Wis. Stat. § 302.11(1g)(b)(1). Lagar's arguments ignore the fact that Commission denied his release on both grounds. In other words, even if the Commission lacked the authority to deny release because Lagar failed to complete the AODA program, the Commission had the authority to deny release based on the independently sufficient grounds of protecting the public. In light of this, Lagar cannot show that he is in custody in violation of his constitutional rights.

B.   **Certificate of Appealability**

Under Rule 11 of the Rules Governing Section 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to petitioner. A

8

certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, the court concludes that petitioner has not made a showing, substantial or otherwise, that the Parole Commission's decisions resulted in denial of his constitutional rights. Because reasonable jurists would not otherwise debate whether a different result was required, no certificate of appealability will issue.

## ORDER

IT IS ORDERED THAT Humberto Lagar's petition for a writ of habeas corpus is DENIED and this case is DISMISSED. No certificate of appealability will issue.

Entered this 23rd day of October, 2015.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge